May it please the Court, Scott Hunt, appearing on behalf of Plaintiff Appellant Erica Schoen. This case, on summary judgment, turns on the issue of pretext and whether or not there was evidence of pretext. The defendant asserted a legitimate business – non-discriminatory legitimate business reason that their reporting requirements were strictly enforced, except for rare occasions where an employee calls in to report a delayed doctor's appointment and submits the required documentation within an hour or two of the time it was required. This case turns on whether there was evidence as to that's a correct statement of the policy, how it was communicated to Ms. Schoen, and whether it was enforced as defendant asserts. There are six different categories of evidence that I believe establishes a question of fact as to pretext. Initially, we have evidence that the two individuals, Ms. Stephenson and Ms. Oliver, who administered their reporting requirement policy, stated that it was as to situations where there was a late doctor's appointment, if the individual called in on time, they would be given through the next day to get the authorization in. And there would be no RRL, the reporting requirement letter or letter of discipline. Ms. Stephenson said essentially the same thing, that if there was difficulty getting a doctor's appointment such that the required reporting document couldn't be in on time, that if they called, they would be given through the next day. Those, that piece of evidence creates a question of fact as to whether the policy was strictly enforced and whether there were rare exceptions described as the defendant asserts or common exceptions as laid out by both the administrators. The next piece of- The district court said that the record does not contain any evidence that defendant has ever granted an extension as long as two days. In fact, the record indicates defendant has often issued RRLs when an employee submitted an authorization that was only two or three hours late. So the district court judge said there's no evidence in the record. Right. That the defendant ever granted an extension as long as two days. Other than the evidence in this record. There was evidence that Ms. Rasmussen said she could have two days extension. No, no, no. Well, I know that. Okay. I mean, that's a question of, I mean, she comes in, she says, look, I was told this, I was told that. Right. Of course, right. I mean, anybody can get up and say I was told this and told that. But few people have a voice message saying it. Well, if in fact, well, that was the voice message in which she also got a letter the next day which said, wait a minute, you don't understand, you have to turn this in at a particular time. That's right. My question to you is what evidence in the record other than her assertions that she was, that other people were given a particular treatment, other than her assertion that that was the case, is there any evidence in the record to support that? Well, we have, Stephan, I just cited evidence. Can I refine that question a minute? I noted the district court statement about two days. But there are three RRLs required here. Isn't that correct? Yes. How many of them were for two days or more? The third one. Okay. So if you went on one of the other two or two of the other, both other twos, they don't have a basis for termination? Correct. All right. Thank you. And as to Judge Breyer's question, there is evidence not just from my client, although on summary judgment that is to be believed. That should be sufficient. But if you require more than her testimony, you have Stephanson's testimony and Oliver's testimony that I just cited to you, that these were the common practices. To give more than two days notice, to allow more than a two-day delay. No. Their notice is next day. And that's a situation that applies to the first RRL in October and the second RRL in February. We have the direct voicemail from Ms. Rasmussen that says, just call us and leave a message on what date your appointment is, and then we'll plan and put you for your update the following day after, by 3 p.m. the following day. That's a voice message. Ms. Rasmussen's testimony is that she said she left a message very much like this, and that on ER 196, and it's miscited as 186 occasionally in our brief, but it is correctly cited at one point. At ER 196, Ms. Rasmussen says that she does not believe what she told plaintiff was outside our reporting requirements. So Ms. Rasmussen leaves a voice message and confirms that it's consistent with the reporting requirements. We then have additional testimony from Ms. Rasmussen, that at one time Ms. Rasmussen told plaintiff, in response to getting an authorization in late, that she could get the note in, quote, as soon as possible, and that's at ER 187, 188. Now, as soon as possible may only be one day, but it may be two days, as was the situation that led to the third RRL, where she called in on the 13th and got a response from Ms. Rasmussen that it would be no problem. That's at ER 31 in plaintiff's declaration, and that she called in on the next day, the 14th, and was told just get it in the next day. Those two statements are consistent with as soon as possible, given the circumstances laid out by Ms. Shane to Ms. Rasmussen. We also have an e-mail document. An e-mail document from Ms. Oliver. This is at ER 296. It's Exhibit 54. It is dated February 9th, the day after the second RRL. And in Ms. Oliver's e-mail, which I encourage the Court to read, it is specific that she states that Ms. Shane had called in on time the previous day. She doesn't say on time, but she references the time, which indicates it would be on time. It's at 296, the e-mail. And she also references that the fax had not been received yet. Now, those two statements that she makes to Mr. LaRoche, La Rochelle, excuse me, the HR director, those two statements are consistent with the policy that Ms. Oliver states is applied. It's consistent with the policy that Ms. Stephenson says is applied, and it's consistent with the e-mail that Ms. Rasmussen gave or, I'm sorry, the voice message that Ms. Rasmussen left for Ms. Shane after the first RRL in October. So we're not relying, Your Honor, just on my client's testimony, although I present or argue that were we given her testimony at summary judgment, which, as the Court knows, has to be accepted, it would be sufficient. The problem with their case is that it's not strictly enforced, according to the administrators. It is commonly provided exceptions to it. Those exceptions are communicated to her, and she complies with them. It's not a question of the two days. That's a red herring, I believe. It only applies to the third one, even if it's not. Finally, I would like to point out that there is a quality of Ms. Rasmussen setting my client up, and that is that she says, yes, I left that voice message, and yes, I told Mr. LaRochelle and Ms. Stevenson that I had left the message that she could get it in the next day, and Mr. LaRochelle and Ms. Stevenson said she never told me that. That's setting my client up to get caught, violate the policy, think it's okay. I'm not going to tell the people that enforce this it's okay. You lose three stripes, you're out, and I will reserve it. We'll give you a minute for sure, but I want to respond to that last argument about being set up. I don't think it's necessary for you to prevail at this point to convince us that there's evidence that she's being set up. I agree. It's sufficient to show that there's evidence that this is inconsistently applied, and it seems quite consistent with the evidence that we have here in front of us that Ms. Rasmussen was acting in good faith and that the others disagreed with what she'd done, and this was not a purposeful setup. It was just, okay, the others didn't want to give the exception that Rasmussen said was permissible. Again, that's all argument. I mean, that's evidence on both sides. And a question for the jury. I don't think the record establishes that it was simply they disagreed with special exceptions. It could be either way. But I think it's sufficient if that's what it is. I understand the position. Okay. Very good. Thank you. Let's hear from the other side, and we'll give you a minute to respond. May it please the Court. Counsel. Seated with me at counsel table but not arguing this morning is Jeffrey Kilmer. Mr. Bussey has laid out, I think, adequately the inquiry here, which is whether there's a genuine issue of fact that freight liners' nondiscriminatory articulated reason for terminating the plaintiff's employment was a pretense. Now, normally a pretense claim arises in a subjective fact situation where the worker's quality of work is apparently not good, where there's no longer a need for the position. Here, what we have is a nondiscretionary policy that was collectively bargained. Well, you say it's nondiscretionary, but if it's applied with a little bit of play around the edges, that's the way it's applied. Well, the play around the edges, Your Honor, at the very most is, and Mr. Bussey, I think, said commonly the record says rarely a one-to-two vote. Well, some parts of the record say rarely. Other parts say, well, no, not necessarily. Well, I would say that if you read those carefully, Your Honor, you'll see that freight lining was applying its policy uniformly, that there is indeed, as Judge Brown said, no evidence that there were exceptions given for it. You know, district judges or maybe I should say lawyers or court of appeal judges have been known to say no evidence, when what they mean is there's not enough evidence or whatever. I think it's flatly untrue that there's no evidence. Shall we say no substantial evidence, Your Honor? There's no substantial evidence you can still win on, but the idea that there's no evidence I think is probably not true. Well, evidence insufficient to create a genuine issue of material evidence. I mean, that's all the standard you need to set. In this setting where it's a pretextual claim, the evidence must be substantial. It must be specific. Well, let's talk about the Stephenson, is it? Yes. Deposition testimony, which is at ER 200. Could you give us your interpretation of what she's talking about? Ms. Stephenson? Yes. I'm sorry, could you give me the citation again to the? ER 200. The underlined, your copy underlined this line. Yes, it does, Your Honor. What is she saying there? There are two different situations, and this is in the record also, in which reporting is required. Well, two for purposes of this case. One is a medical leave, which is what the plaintiff had here. She was emotionally fragile and would go on medical leave for a few days at a time and would be given a date that she needed to return to work by her attending physician. That situation is one in which, because scheduling can be done, one can plan ahead, the doctor's shift, if you will, is required by the end of the shift on the day that the claimant was returning to work. There's a second one. This is the daily absence. I got the flu this morning. My child is sick. You call in, it's exigent. You've got to go to the doctor right away. And in those instances, there is a policy for submission of the documentation the following day. That is not the plaintiff's situation here. So this testimony doesn't apply to her because? It does not apply to her because she was on medical leave every time here. And in addition, of course, the second and third RRLs had nothing to do with her need to schedule an appointment at the last moment. The first RRL was one where she had called in the day before, October 11th, and the record shows that she was told her paperwork was fine, but she didn't even have her appointment for the following day yet. That paperwork would not be her doctor's appointment. Her paperwork was other matters in her file. The following day, when she had the doctor's appointment, she called in leaving a voicemail so she couldn't have been told it's fine, and then she filed an RRL. But now you're arguing the evidence. I'd like to understand what Staffordson's testimony, because she goes on and she testifies at the bottom of 201 to the top of lines 1 through 7 of 202. Yes. And you're saying that only applies in the case of a same-day illness? Yes, that's correct, Your Honor. And how do we know that? I believe Ms. Oliver clarified that, and I apologize. I can't direct you to the place in the record where that is said. And the reason for not doing it if somebody's on medical leave? That you have time to schedule. You have a doctor's appointment, you're on medical leave, and it's in the collective bargaining agreement, so the reasoning may not be relevant here, but to the extent it is, there is rationale for it. So it's your point that if there were exceptions to this policy, the exceptions are limited to those cases in which exigent circumstances would justify a late request. I could not have said it better, Your Honor, yes. But if we scour the record, we won't find any evidence that suggests a flexibility with respect to this policy, that there won't be any evidence or that the evidence will be insignificant. The evidence will be that rarely there is a one- or two-hour extension. I cannot, and I have not scoured the record for this particular point, Your Honor, so I don't want to misrepresent anything. I cannot recall anything else in the record that tells you that Freightliner made exceptions in other instances. And as a matter of fact, they absolutely did. Now, can I just understand the factual context of this answer? Ordinarily, if someone would call in and tell you that they can't get in the slip until the next day because of a late-day appointment, would you issue an RRL letter in that circumstance? Okay, so I'm on medical leave. I'm going to a doctor at 3 o'clock in the afternoon, so I can't get the letter. You're saying I have to go get the letter in advance of my appointment? Yes, and it can be done, and it was done by the plaintiff, Your Honor, either before the appointment or even during the appointment. Okay, I understand it can be done. That's not the qualifier of this answer. You're giving me the qualifier. But it seems to focus on the recognition that if you're late in the day of your appointment, when you would get the doctor's note when you are at the doctor, you could then bring it in the next day. I think not, Your Honor. And I will cite you to the voicemail by Ms. Rasmussen where she says we'll just ---- What page are you on? I'm sorry. I'm on page 19 of the appellant's brief. This is the voicemail to which Mr. Bessie was alluding, and it's Ms. Rasmussen leaving a voicemail for the plaintiff saying just call in and leave a message on what date your appointment is, your psychiatrist appointment. We'll plan to put you for your update the following day. That is, it would indicate that actually there was an update and there are update appointments in the record by Dr. Sweetman, who was the attending physician for the plaintiff. And so what she's saying is your update will be on a particular date, your visit with your psychiatrist, and then by 3 o'clock on ---- The following day. Well, the following day being the date of her visit with her psychiatrist because you see what we're doing is changing the date of the appointment. You could just call and leave a message on what date your appointment is, and then we'll just plan and put you for your update the following day after, by 3 o'clock the following day. That's the day after the appointment. The following day would be I submit the date that the appointment was showing on Freightliner's record as having occurred. That's 3 o'clock that day at the end of her shift. That's not what this statement said. Well, I submitted it. I'm sorry. That's the logical inference from it, but I think maybe we have to agree to disagree on that particular one. Okay. We'll agree to disagree and let the jury resolve it, right? Well, I think the ---- There's no evidence, you said, no evidence whatsoever. Now you're saying we have a disagreement on how one reads the language of a voicemail. I think, Your Honor, it is really the question of how she reasonably would interpret it. In other words, if that's the message and it's not unreasonable for her to interpret that the deadline for getting in her request, her statement and so forth, is 24 hours or 18 hours or whatever it is after her medical appointment, if that's not an unreasonable understanding, then isn't there some evidence in the record of some flexibility with respect to the implementation of this policy? That's what I think Judge Fischer is saying. There were multiple times, Your Honor, when the plaintiff submitted timely documentation, and this voicemail is almost surely in connection with one of those because it was after the first RRL, and the second and third RRLs had nothing to do with her not being able to get an appointment until later in the day. The second and third? Second and third. And the voicemail we're talking about was between the first and the second. But this seems to be an application of three strikes, you're out, right? I mean, this is bringing the ---- You're saying there's not a lot of flexibility with this three strikes, you're out policy. It's in the contract, it's in the labor contract, and everybody understood it. And what she is saying is, excuse me, I didn't understand it that way, and the reason for my not understanding it that way was what my employer told me from time to time, or at least on one incident. All it takes is one incident, one incident, and she understands it a particular way. We have two strikes, you're in. So that's her argument, isn't it? At least as to what? Well, the argument, Your Honor, needs to be for the plaintiff that because the plaintiff filed the first lawsuit in this matter, she was terminated. That's a different argument. I understand that argument, that this was all a retaliatory measure. And that's what this case is about, of course. On pages 25 and 26 of our answering brief, if I may continue, the judge asked plaintiff's counsel, now your claims, and she went through claim one, claim two, your claim is that the plaintiff was terminated because she filed chain one, which is the first lawsuit. And in both cases, well, the first time counsel said exactly, the second time he said yes. So that's really what this case is about. Was there that animus? Of course that's what it's about. Even if it were, even if it did support an inference of an unevenly enforced attendance policy in some instances, there is no evidence of discriminatory animus, no evidence, as Judge Fletcher was saying, I think that there was ill will here, that it was a good faith mistake at the most. That would not even go that far. That's a defense. That may be a defense that could be put before a jury. I see my time has long expired. Okay. If the Court has further questions, I'm glad to respond. No, thank you. Would you like a minute? Judge Fisher, the answer to your question regarding Ms. Steffensen's testimony is that there is nothing in the record that makes it clear that that was the medical leave policy and not, I'm sorry, the daily absent policy rather than speaking to the medical leave policy. If you look at Oliver's testimony, it also is speaking specifically about the need for a medical slip. What page are we looking at for Oliver's testimony? Oliver's testimony is 163. And she's asked about if somebody indicates they can't get the medical slip in on time, and she goes on to say, well, if it's been rescheduled, well, we tell them thanks for calling and we'll wait for the note. That's consistent with her e-mail message in February on ER 296. She calls and leaves a message, I'm waiting for the note. If the court turns to page ER 228, the absence call-in and reporting requirements are laid out in the record. As to the daily absence that the defendant would have you believe this testimony about the required slip is addressing, there is no requirement for a medical slip as to the daily absence on page ER 228. The medical slip is only required for a medical leave of absence. It is a false argument to say that the testimony by Stephenson and Oliver regarding not getting a slip in is due to daily absences when the daily absence policy does not require such a slip. Thank you. All right. Before you sit down, I want to make sure I'm on page 228. I'm just following this. There are two subheads here, daily absence. Right. And that's three lines, and it says you must call a certain number to report your absence. Any day of absence for which there is no call will be unexcused for attendance control purposes. Next subhead, medical leave of absence, initial request, and then they go through the requirements. Right. So you're saying if it's a daily absence because you're sick, okay, I got it. There's no, at least in this record, Your Honor, there's no reference to the requirement for a time slip as to that daily absence policy. It's only applied to the medical leave, and the questions regarding the testimony by Stephenson and Oliver is in the context of getting a medical slip in. Okay. Thank you. Thank you, both sides. Now I'm pronouncing it correctly, I believe. Shane v. Kraliner, now submitted for decision. We'll take a ten-minute break. Sorry for the delay. We'll return for the last two arguments in ten minutes.
judges: Fletcher, Fisher, Breyer